**UNITED STATES DISTRICT COURT DISTRICT OF NEVADA**

**John Cesario**

**David Preka**

*Plaintiffs*

*vs.*

**Vistagen Therapeutics Inc.**

**Shawn K. Singh**
**John S. Saxe**
**Jerry Gin**
**Mary L. Rotundo**
**Ann Cunningham**
**Maggie Fitzpatrick**
**JoAnne Curley**
**Mark McPartland**
**Mark Flather**
**Ralph Snodgrass**
**Michael Liebowitz**
**Louis Monti**
**Joshua Prince**

*Defendants*

Case No.: **2:26-cv-01128-RFB-MDC**

Judge: Judge Richard F. Boulware

Courtroom:

**Jury Demand Requested**

✓ FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD
MAY 05 2026
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

**AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiffs, Cesario and Preka ("Plaintiffs"), are longtime shareholders of Vistagen Therapeutics, Inc. ("Vistagen"). They submit this Verified Shareholder Derivative Complaint against the above-referenced Board of Directors, Board of Advisors, and Executive Management Team of Vistagen ("the collective Defendants"). By virtue of their positions, the collective defendants had knowledge of all the allegations set forth in this complaint.

Vistagen, a biotech with no revenues. Vustagen has an operating deficit approaching $400 million. Vistagen's massive operating losses were funded by public stock offerings. The majority of stock offerings were sold to investment banks that pumped up Vistagen's stock price, followed by those investment banks dumping their Vistagen holdings on the general public. Vistagen's multi-year fraud scheme began in September of 2019 when they issued an intentionally misleading press release stating that they acquired the license for a drug compound called "fasendiel," referred to as PH94B, to treat social anxiety disorder. In December of 2019, Vistagen's stock price collapsed nearly 90% to $0.14 after its flagship drug failed. Vistagen CEO Shawn Singh took approximately **$4.5 million in compensation and bonuses in 2019 based on Vistagen's misleading statements regarding PH94B.**

## PARTIES

### I. NATURE OF THE ACTION

1. This is a shareholder derivative action brought on behalf of Vistagen to redress federal and state securities law violations, breaches of fiduciary duty, common law fraud, deceit, and criminal acts committed by the defendants from September 2018 to the present (the "Relevant Period").

   See *VistaGen Therapeutics Acquires Worldwide License of Phase 3-Ready CNS Drug Candidate from Pherin Pharmaceuticals for* As-Needed Treatment of Social Anxiety Disorder | Vistagen Therapeutics, Inc.

2. Defendants orchestrated a multi-year fraud on the market scheme by (a) unlawfully concealing material negative facts regarding Phase 2 trials of their drug candidate, called PH94B; (b) disseminating materially false facts and material omissions in Form 8-K filings, press releases, prospectuses, and presentations filed with the SEC; and (c) executing an unlawful "pump and dump" scheme that defrauded the public out of over $1 billion.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question) and Section 27 of the Exchange Act. Supplemental jurisdiction exists over state law claims under 28 U.S.C. § 1367. Claims against the Defendants include violations of the Exchange Act, common law fraud, constructive fraud, deceit, and violations of fiduciary duties.
4. The Plaintiffs are not Nevada or California residents and claim diversity.
5. The venue is proper in the District of Nevada, as Vistagen is a Nevada corporation. Vistagen's business operates out of California.

## III. PARTIES

### Plaintiffs

A. **John Cesario** ("Cesario") is a Connecticut resident and a longstanding shareholder in Vistagen. Cesario and Preka were at all relevant times shareholders of Vistagen.

B. **David Preka** ("Preka") is a Connecticut resident and a longstanding shareholder in Vistagen

### Defendants

C .**Shawn K. Singh** ("Singh" ) is Vistagen's long-standing CEO. He is also a long-standing member of Vistagen's Board of Directors.

D. **John S. Saxe** ("Saxe") is a long-standing member of Vistagen's Board of Directors. Saxe's bio states that he "served as Chair of our Board of Directors from 2000 until October 2023, and he is the current Chairman." Saxe is a member of the Audit Committee.

E. **Jerry Gin** ("Gin") is a former long-standing member of Vistagen's Board of Directors. Gin is a member of the Audit Committee.

F. **Mary L. Rotundo** ("Rotundo") serves on Vistagen's Board of Directors, appointed in 2021. Rotundo is an attorney and is a member of the Audit Committee

G. **Ann Cunningham** ("Cunningham") serves on Vistagen's Board of Directors and was appointed in 2019. Cunningham's bio states that Cunningham brings over 25 years of commercial experience in the pharmaceutical industry.

H. **Maggie Fitzpatrick** ("Fitzpatrick") is a Vistagen Board of Directors member appointed in 2021. Fitzpatrick sits on the corporate governance committee.

I. **JoAnne Curley** ("Curley") is a member of the Vistagen Board of Directors who was appointed in 2021. Curley sits on the corporate governance committee.

J. **Mark McPartland** ("McPartland") joined Vistagen in September 2016 as the Senior Vice President of Investor Relations. Mr. McPartland has over 28 years of experience in corporate development, investor relations, and capital markets, working with private and public biotechnology, healthcare, and technology companies.

K. **Mark Flather** ("Flather") served as Senior Vice President of Corporate Strategy and Capital Markets. Mr. Flather has more than 25 years of capital markets experience in various capacities on both the buy-side and sell-side before joining Vistagen in March 2021.

L. **Ralph Snodgrass** ("Snodgrass") was the founder of Vistagen and remained as Vistagen's president until 2022, when he purportedly was fired.

M. **Michael Liebowitz** ("Liebowitz") is on Vistagen's Board of Advisors and was the primary investigator on all PH94B trials.

N. **Louis Monti** ("Monti") joined Vistagen as a senior vice president and is the chief medical officer. Prior to joining Vistagen, Monti served in multiple leadership roles at Pherin Pharmaceuticals since its founding in 1991, including President and CEO from July 2018 through November 2020.

O. **Joshua Prince** (Prince) has served as an executive at Vistagen since 2021 and is currently the Chief Operating Officer.

P. **Nominal Defendant:** Vistagen Therapeutics, Inc. is a Nevada corporation.

Q. **Reid Adler:** Vistagen's in house legal council.

## IV. STATEMENT OF FACTS

### The Initial Fraud: PH94B (2018–2023)

6. As noted above, the beginning in September 2018, Vistagen initiated a fraudulent scheme, claiming the Phase 2 trial of PH94B for Social Anxiety Disorder (licenses that were acquired from Pherin Pharmaceuticals) and Pilot Phase 3 trials were successful.

7. **Material Omission:** Defendants failed to disclose that ClinicalTrials.gov rejected the publication of these results following a quality control (QC) review. To ensure transparency and accessibility of clinical trial data, federal law mandates the posting of trial results on clinicaltrials.gov.

- Title VIII of the Food and Drug Administration Amendments Act of 2007 (FDAAA)

8. **Material Deception:** Defendants failed to disclose that clinicaltrials.gov rejected publishing the trials after a quality control review. The defendants also failed to disclose that the trials were done as long as 8 years prior, conducted primarily in Mexico, and were disseminated to the public through press releases, quarterly and annual reports, prospectuses, and corporate presentations filed with the Securities and Exchange Commission ("SEC").

Federal law requires that ALL clinical trials be registered with clinicaltrials.gov and that the results be published. As noted, the PH94B Phase 2 trial was rejected for publication on clinicaltrials.gov after a quality-control review. Failing a quality control review is material and a serious red flag regarding the trial's competency.

9. In December 2018, following the failure of flagship drug AV-101, Vistagen's stock collapsed to $0.15. Plaintiff alleges the September PH94B announcement was a "placeholder" fraud to mitigate the known impending failure of AV-101. Take Judicial Notice of Vistagen's press release.

> *VistaGen Therapeutics Acquires Worldwide License of Phase 3-Ready CNS Drug Candidate from Pherin Pharmaceuticals for As-Needed Treatment of Social Anxiety Disorder | Vistagen Therapeutics, Inc*

### The Pilot Phase 3 Deception (2010–2023)

10. In April 2020, Defendants claimed a "successful" Phase 3 pilot for PH94B. They again concealed that the trial was six years old, consisted of only 22 participants, and was rejected by ClinicalTrials.gov for failing QC standards.

11. Based on these misleading statements, the company raised $125 million through three separate stock offerings.

### The PALISADE Failures and COVID-19 Recklessness

12. In 2021, Vistagen initiated the **PALISADE-1** and **PALISADE-2** Phase 3 trials based on their claims that the Phase 2 trials were successful. The Defendants stated that the trial design was virtually identical to the Phase 2 trial design despite the drug being administered intranasally. Defendants recklessly commenced trials at the height of the COVID-19 pandemic, knowing that the virus affects the nasal passageways, thereby compromising data integrity.

13. **The Reckless COVID-19 Trial Design** The Defendants ignored basic biological science in the pursuit of profit. By conducting the PALISADE trials for an **intranasal** drug during the peak

of a respiratory pandemic (COVID-19), the Board ensured the data would not be corrupted. They failed to disclose this risk to investors, leading the trial endpoints to fail as expected in July 2022.

14. Shortly before the Defendants announced that the PALISADE-1 trial failed, they realized that they needed to get the Phase 2 and Pilot Phase 3 trials published. They resubmitted the trials to clinicaltrials.gov, and they were again rejected following a quality control review.

**Results Submitted - Not Posted on ClinicalTrials.gov**

Results information has been submitted to ClinicalTrials.gov by the sponsor or investigator, but is not yet publicly available (or "posted") on ClinicalTrials.gov. The submitted information may not be available if it is pending Quality Control (QC) Review by the National Library of Medicine (NLM) or if issues identified during QC review are being addressed or corrected by the sponsor or investigator. NLM's limited QC review assesses for apparent errors, deficiencies, or inconsistencies. NLM staff do not verify the scientific validity or relevance of the submitted information.

Vistagen Resubmits the trial on April ,4th 2022 and it was rejected for Quality Control Reasons Again!

| Recruitment Status | Actual Primary Completion Date | Actual Study Completion Date |
|---|---|---|
| Completed | 2011-02 | 2011-03 |

| Submission Cycle | Results Submitted to ClinicalTrials.gov | Results Returned After Quality Control Review |
|---|---|---|
| 1 | 2015-12-29 | 2016-02-01 |
| 2 | 2019-08-27<br>(Canceled on 2019-08-27)<br>2022-04-04 | 2022-05-02 |

15. On July 22, 2022, Vistagen announced PALISADE-1 failed to reach its endpoint. Vistagen's stock price collapsed to $0.06. Vistage paused the second leg of the Phase 3 PH94B trial, PALISADE-2, pending a team of biostatisticians unblinding the trial and providing their recommendation on whether to proceed or cancel it.

16. On September 8, 2022, Vistagen issued a press release with the SEC DEFINITIVELY stating that they were going to continue with the Palisade-2 trial as designed based on the recommendation of the biostatisticians; however, Vistagen did not have the capital to finish the trial and never finished the clinical trial. Take judicial notice of Vistagen's press release;

*https://www.vistagen.com/news-releases/news-release-details/vistagen-proceed-palisade-2-phase-3-clinical-trial-ph94b-social*

**The July 2023 "Pump-and-Dump"**

17. On July 7, 2023, Vistagen filed a fraudulent and misleading Form 8-K and press release with the SEC claiming PH94B was the *"first successful Phase 3 trial for social anxiety in 15 years."* This was a knowing, intentional sham against the investing public and Vistagen shareholders. Vistagen voluntarily terminated the trial and did not enroll the agreed-upon participants when the FDA approved it. It was an interim trial. The FDA required Vistagen to redo both legs of the Phase 3 trials, named PALISADE-3 and PALISADE-4. PALISADE-3 failed. Take judicial notice of Vistagen's press release.

> *https://www.biospace.com/vistagen-announces-positive-top-line-results-from-phase-3-palisade-2-trial-of-fasedienol-ph94b-nasal-spray-in-social-anxiety-disorder*

18. On July 7, 2023, Vistagen's stock price surged from **$2.00 to $71.00 by 9:28 AM** in pre-market trading.

19. At 9:30 AM, Vistagen utilized **Jefferies Inc.** to "dump" stock into the inflated market, selling shares at prices as high as $25.00 to raise $38 million. Vistagen continued to dump shares, bringing them down to $5.00 over the next several days. Vistagen next issued a materially misleading prospectus and raised $100 million.

20. Senior VP Mark McPartland admitted to the plaintiffs that the company did not have the funds to complete the PALISADE-2 trial and that the capital raise was the primary objective, noting they raised funds at over $7.50/share versus the pre-reverse split price of $0.06.

21. Vistagen's fraudulent filings with the SEC continue to this day.

## V. DEMAND FUTILITY

21. Plaintiff has sent correspondence to the Board detailing these fraudulent acts, and the Board responded with demonstrably false statements.

20. No further demand is required as the directors are "interested parties" and participants in the underlying fraud, rendering them incapable of bringing an unbiased suit against themselves.
21. Plaintiff's **Exhibit A**—Singh's obscene salary and bonuses paid from 2019 to date, based on capital raises due to his fraudulent conduct, totaling $15 million.
22. The collective defendants were or remain members of either the Board of Directors or the executive management team of Vistagen. All collective defendants were and remain

bound by the federal and state securities laws, rules of the SEC, and Vistagen's Code of Conduct. Take judicial notice of Vistagen's Code of Business Conduct filed with the SEC. https://www.sec.gov/Archives/edgar/data/1411685/000141168525000041/ex141vtgncodeofbusinessc.htm

23. The collective defendants benefitted from their illegal acts through ill-gotten salaries, cash bonuses, employee stock grants, and stock option issuances.

24. The collective defendants continue to violate securities laws in recent SEC filings. Vistagen's March 16th, 2026, corporate presentation filed with the SEC makes the following misleading statements and material omissions in its corporate presentation:

   a. Page 9 chart fails to disclose that every Phase 2 trial submitted to clinicaltrials.gov was rejected for publication by clinicaltrials.gov after a quality control review in violation of federal law..

   b. Paghe 9 fails to disclose that the PH10 Itrovone phase 2 trials were not published on clinicaltrials.gov in violation of federal law.

   c. Page 19 fails to disclose that the PALISADE-2 trial was voluntarily terminated by Vistagen and not a completed Phase 3 trial.

25. Vistagen's past and present board of directors have failed to correct past SEC filings that have misleading statements and material omissions in violation of federal and state securities laws.

26. On April 13, 2026, Vistagen filed compensation of various officers with the SEC, granting certain officers additional stock options after their stock price collapsed. "Shawn K. Singh, President and Chief Executive Officer, (ii) Reid G. Adler, Chief Legal Officer, (iii) Elissa S. Cote, Chief Corporate Development Officer, (iv) Joshua S. Prince, Chief Operating Officer, and (v) Nick B. Tressler, Chief Financial Officer.The Options were issued on April 7, 2026 (the "*Grant Date*") under the Company's Amended and Restated 2019 Omnibus Equity Incentive Plan, as amended (the "*2019 Plan*"), and have an exercise price of $0.5358"

https://www.sec.gov/Archives/edgar/data/1411685/000162828026024943/vtgn-20260407.htm

27. Vistagen's board of directors responded to Plaintiff Cesario's letter informing the board that they committed fraud and violated federal and state securities laws. Vistagen's board responded

through their SEC lawyers. Latham & Watkins. Vistagen's response was intentionally deceptive and fraudulent. Plaintiff's **Exhibit B**

1. The letter intentionally misrepresented the trial that the PALISADE Phase 3 trials were based on. The board intentionally sent a link to a publication to the multi-dose, multi-week trial called the Pilot Phase 3 trial instead of the one-dose Phase 2 trial which the Phase 3 trialse were modeled on.
2. The board misrepresented that the FDA rule that could terminate Phase 3 trials. As noted above, Vistagen terminated the PALISADE 2 trial because they did not have the funds to finish the trial, despite issuing a standalone press release stating that they were going to finish the trial. Phase 3 trials could be stopped by the FDA for safety concerns; that was not the case relating to PALISADE 2

28. Judicial Notice of Vistagen's several quarterly and annual reports filed with the SEC. The reports concealed that the Phase 2 SAD trial, which the Phase 3 PALISADE trials were based on, was rejected for publication by clinicaltrials.gov multiple times after a quality control review.

*"In this published randomized, double-blind, placebo-controlled Phase 2 clinical trial (n=91) conducted at three clinical sites, 91 adult female subjects diagnosed with SAD underwent a placebo-only baseline public speaking and social interaction challenges in a clinical setting followed a week later by a randomized placebo-controlled treatment period and intranasal administration of fasedienol. Fasedienol (1.6 µg) was administered intranasally 15 minutes prior to both the public speaking and social interaction challenge simulations. The two challenges were separated by a 30-minute rest period.*

2020 annual report -

https://www.sec.gov/Archives/edgar/data/1411685/000165495420007107/vtgn10k_mar312020.htm

2021 annual report -

https://www.sec.gov/Archives/edgar/data/1411685/000165495421007380/vtgn_10k.htm

2022 annual report -

https://www.sec.gov/Archives/edgar/data/1411685/000165495421007380/vtgn_10k.htm

February 10, 2022 Quarterly Report - Vistagen fails to mention that PH94B and PH10 trials were not published on clinicaltrials.gov in accordance with federal law.

2023 annual report - In addition to material omissions relating to the Phase 2 trial that the PALISADE Phase 3 trial was based on, Vistagen also omitted that the multi-dose Phase 2 trial that they called a Phase 3 Pilot was rejected multiple times for publication by clinicaltrials.gov after a quality control review.

## VI. CAUSES OF ACTION

**COUNT I: Intentional and Knowing Violations of Section 10(b) of the Exchange Act and Rule 10b-5 and California Fraud-Based Claims** (Against All Individual Defendants). Defendants knowingly disseminated material misrepresentations and/or knowingly participated in covering up the federal and state securities laws and fraud claims described in this complaint.

**COUNT II: Breach of Fiduciary Duty** (Against All Individual Defendants) Defendants breached their duties of loyalty and care by engaging in a pump-and-dump scheme and failing to maintain internal controls over regulatory reporting.

**COUNT III: Pump and Dump Scheme / Insider Trading / Unjust Enrichment** (Against Individual Defendants) From September 2018 through today, the Defendants profited from the sale of stock to the public while knowing they were defrauding the investing public by concealing the adverse material omissions regarding PH94B QC rejections by Clincaltrials.gov, the multitude of violations of federal and state securities laws through misleading statements, and the September 2023 criminal pump and dump scheme.

## VII. PRAYER FOR RELIEF

Plaintiff requests judgment:

- Awarding Vistagen compensatory damages for the Defendants' misconduct;
- Ordering the disgorgement of all salaries, bonuses, consulting fees, and stock awards and options earned by Defendants during the Relevant Period;
- Vistagen denies the defendants' indemnification in any and all lawsuits, as they knowingly participated in federal and state security laws, fraud, and criminal acts, and/or covered them up, in violation of the Vistagen Code of Conduct filed with the SEC.
  - *https://www.sec.gov/Archives/edgar/data/1411685/000141168525000041/ex141vtgncodeofbusinessc.htm*

Respectfully Submitted this 4th Day Of May 2026

John Cesario Pro Se

15 Darrows Ridge

East Lyme, CT 06333

Phone - 860-333-4300

Johncesario9@gmail.com

David Preka Pro Se

298 Boston Post Road,

East Lyme, CT 06333

Phone - 860-365-9041

David@advimpllc.com

**Plaintiff's EXHIBIT A**

## Singh's Obscene Compensation

**FULL YEAR 2018: $1,272,900 (Base: $424,597 + Cash Bonus $206,369 + Option Award $641,934)**

**FULL YEAR 2019: $951,115 (Base: $466,365 + Cash Bonus $110,305 + Option Award $374,445)**

**FULL YEAR 2020: $933,667 (Base: $498,000 + Option Award $435,667)**

**FULL YEAR 2021: $2,480,000 (Base: $650,000 + Cash Bonus $650,000 + Option Award $1,180,000)**

**FULL YEAR 2022: $1,183,000 (Base: $563,000 + Option Award $620,000)**

**FULL YEAR 2023: $2,477,432 (Base: $650,000 + Cash Bonus $276,000 + Stock Grant: $1,551,432)**

# Plaintiffs EXHIBIT B

12670 High Bluff Drive
San Diego, California 92130
Tel: +1.858.523.5400 Fax: +1.858.523.5450
www.lw.com

LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES
Austin, Beijing, Boston, Brussels, Century City, Chicago, Dubai, Düsseldorf, Frankfurt, Hamburg, Hong Kong, Houston, London, Los Angeles, Madrid, Milan, Munich, New York, Orange County, Paris, Riyadh, San Diego, San Francisco, Seoul, Silicon Valley, Singapore, Tel Aviv, Tokyo, Washington, D.C.

November 27, 2023

**VIA EMAIL**

John Cesario
PO Box 655
15 Darrows Ridge
East Lyme, CT 06333
Johnces7@gmail.com

Re: Your Letters to Vistagen Therapeutics, Inc.

Dear Mr. Cesario:

We represent the Board of Directors (the "Board") of Vistagen Therapeutics, Inc. ("Vistagen" or the "Company") and the Company in connection with the September 6, 2023 and October 2, 2023 shareholder letters sent by you to the Company (the "Letters"). In correspondence dated September 25, 2023, and October 16, 2023, the Board acknowledged receipt of your Letters and invited you to submit additional information supporting your purported shareholder demands. To date, you have failed to do so.

In the meantime, even though you have not met the applicable statutory threshold to pursue a shareholder demand, the Board has carefully considered the allegations outlined in your Letters and independently evaluated your purported demands. Your Letters makes a series of allegations, including that shareholders have experienced losses due to an alleged "pump-and-dump" scheme, demands production of certain Company records, and threatens litigation against the Company and its officers and directors. As summarized below, the Board finds the allegations in your Letters to be without merit. The Board accordingly rejects the demands in the Letters.

By sending your Letters and making the demands, you recognize that a majority of the Board is disinterested and independent and accordingly can objectively assess the allegations in the Letters. *See, e.g.*, *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991). The Board is currently composed of seven directors: John Saxe, Ann Cunningham, Joanne Curley, Mary Rotunno, Maggie FitzPatrick, Jerry Gin, and Shawn Singh. A supermajority of that number – all except Shawn Singh and Ann Cunningham – are independent directors under the applicable rules and standards established by the U.S. Securities and Exchange Commission (the "SEC") and the NASDAQ Stock Market LLC ("Nasdaq"). Mr. Singh as Chief Executive Officer of the Company, and Ms. Cunningham, as the Company's former Chief Commercial Officer, a position

LATHAM&WATKINS LLP

Ms. Cunningham held within the last three years, are the only interested directors under applicable SEC and Nasdaq rules.

After receiving your Letters, the Board requested that Latham & Watkins LLP conduct an investigation into the allegations set forth in your Letters and provide the Board with a legal summary of the findings resulting from that investigation. The Board carefully considered those findings in evaluating the merits of the allegations and demands in your Letters. Following a full and open discussion, consideration of the findings from the investigation by Latham and Watkins LLP, as well as the documentary record, including public disclosures in Vistagen's public statements and periodic filings with the SEC concerning the clinical development of fasedienol (also referred to as PH94B), the Board has concluded, in the exercise of their business judgment, that the allegations in your Letters lack merit or factual support, and that further investigation or pursuit of any of the allegations in your Letters would waste corporate resources, distract from Vistagen's operations in pursuit of its mission, and not be in the best interest of the Company or its shareholders.

Notably, the majority of your allegations are based on fundamental misperceptions of the public record that are refuted by facts contained in Vistagen's public statements and SEC filings, as reflected below.

**<u>Vistagen's August 7, 2023 Public Announcement</u>**. Your Letters threaten both derivative and securities litigation because Vistagen allegedly "committed fraud and perpetrated a massive pump and dump." Specifically, your Letters allege that Vistagen issued a false and misleading press release on August 7, 2023, that was designed to inflate Vistagen's stock price, and that after it issued the press release, it illegally raised capital by selling shares based on a pre-existing prospectus and ATM. These allegations are refuted by the public record.

As an initial matter, the FDA allows wide latitude in clinical trial design, and a Phase 3 trial should include sufficient numbers of study participants "to demonstrate whether or not a product offers a treatment benefit to a specific population." *See, e.g.*, "Step 3. Clinical Research" on the FDA's website. FDA guidelines contemplate that an interim analysis may be conducted "prior to formal completion of a trial." *See* "Guidance for Industry, E9 Statistical Principles for Clinical Trials" at p. 25 (FDA, September 1998). Early termination of clinical trials is not uncommon or forbidden, whether based on reasons of safety, efficacy, futility, or other concerns. And a trial's completion date is when the "final subject was examined or received an intervention for the purposes of final collection of data for the primary outcome, whether the clinical trial concluded according to the pre-specified protocol or was terminated." 42 C.F.R. § 11.10(a).

In light of this regulatory authority, your central allegation of fraud—that PALISADE-2 was incomplete because it ended before enrolling the full number of originally contemplated participants—is wrong. Your Letters also incorrectly asserts that "no endpoints were reached," which disregards the statistically significant findings of clinical efficacy accurately reported by Vistagen for multiple therapeutic endpoints, including the primary efficacy endpoint of the trial.

LATHAM&WATKINS LLP

Your Letters further ignore or misrepresent the relevant facts and history regarding Vistagen's PALISADE Phase 3 program for the clinical development of fasedienol for the acute treatment of anxiety in adults with social anxiety disorder ("SAD"), all of which were repeatedly accurately and timely disclosed to investors. By way of background, in July 2020, after discussions with the FDA, Vistagen disclosed that its Phase 3 clinical development of PH94B for the acute treatment of anxiety in adult patients with SAD would be a randomized, double-blind, placebo-controlled, parallel comparison study involving a single laboratory-simulated anxiety-provoking public speaking challenge and that the Subjective Units of Distress Scale (SUDS) would be used to assess the primary efficacy endpoint in the study. *See* Press Release dated July 23, 2020.

PALISADE-1 was Vistagen's first Phase 3 clinical trial of fasedienol for the acute treatment of anxiety in adults with SAD. The study was designed as disclosed in July 2020. As Vistagen disclosed in July 2022, the PALISADE-1 trial did not meet its primary efficacy endpoint. *See, e.g.*, Press Release dated July 22, 2022.

With the results of PALISADE-1 in hand and after careful consideration, and in accordance with its business judgment, Vistagen's management determined to pause PALISADE-2 rather than continue to invest substantial additional resources in the study at that time. Vistagen promptly disclosed this decision to investors. *See, e.g.,* Press Release dated August 11, 2022. Vistagen also considered the potential implications of the PALISADE-1 results for PALISADE-2. Given the unexpected PALISADE-1 topline results relative to Phase 2 studies of PH94B, Vistagen engaged independent third-party biostatisticians to conduct an interim statistical analysis on the PALISADE-2 data from the subjects who had been randomized in the study as of the date the study was paused. Vistagen did this to help inform its decision regarding potential next steps for PALISADE-2. This too was accurately and timely disclosed to investors. *See, e.g.*, Press Release dated August 11, 2022.

On September 8, 2022, Vistagen announced the recommendation of the independent third-party biostatisticians who conducted the interim statistical analysis to continue PALISADE-2 as originally planned. *See* Press Release and 8-K dated September 8, 2022. Vistagen also announced that it was preparing to resume PALISADE-2, and also intended to meet with FDA to discuss its potential future Phase 3 development plans for fasedienol as a treatment for SAD. Over the next several months, Vistagen continued to keep investors apprised of its plans for Phase 3 development of fasedienol, including its efforts with respect to proceeding with PALISADE-2 and its preparations to meet with the FDA to discuss potential future Phase 3 development plans. For example, on November 10, 2022, Vistagen filed its 10-Q for the Quarter Ended September 30, 2022 with the SEC, advising investors as follows:

> In August 2021, we initiated PALISADE-2, which involves the same study design as PALISADE-1. In July 2022, after receiving top line results from PALISADE-1, we paused recruitment and enrollment in PALISADE-2 to allow independent third-party biostatisticians to conduct an interim analysis of available data from subjects randomized in PALISADE-2 up to the date we paused the study. In September 2022, based on their review of unblinded data from the 140 subjects who had

> completed PALISADE-2, the independent third-party biostatisticians recommended that we continue PALISADE-2 as planned. Although we did not and do not have access to any unblinded data from PALISADE-2, based on the outcome of the interim analysis and the recommendation from the independent biostatisticians, we are preparing to restart PALISADE-2 as soon as practicable and continue the study to full targeted enrollment of 208 subjects. In addition to preparing to restart PALISADE-2, we are planning to meet with the FDA as soon as possible in the near term to discuss and reach consensus with the FDA on the next step in our Phase 3 development program for PH94B as a potential treatment for adults with SAD.

Subsequently, Vistagen did exactly that—*i.e.*, continued preparations for the resumption of PALISADE-2, while submitting material necessary to engage with the FDA on potential future Phase 3 development of fasedienol. In addition, at that time, Vistagen also monitored the progress of two ongoing Phase 2 clinical trials in SAD being conducted by peer companies that were expected to read out before the end of 2022. Significantly, like PALISADE-2, both of these trials involved a public speaking challenge design and used the SUDS as the measurement of their primary efficacy endpoint. In December 2022, both peer companies announced unsuccessful study results from their Phase 2 studies, raising significant new and additional important considerations for the Company in its ongoing assessment of potential next steps with respect to the Phase 3 development program for fasedienol, including with respect to resuming PALISADE-2.

The ongoing status of these preparations and external events was disclosed to investors as part of a Corporate Update on February 7, 2023:

> After further analysis of PALISADE-1, a single administration Phase 3 public speaking challenge study, the Company has identified several potential explanations for the unexpected results of the study, primarily complexities associated with the single-dose assessment public speaking challenge methodology and conducting the study during surges in the COVID-19 pandemic. The Company recently submitted to the U.S. Food and Drug Administration (FDA) proposed adjustments to the PALISADE-2 study protocol. Should Vistagen resume PALISADE-2, the proposed amendments are intended to address various methodological issues believed to have contributed to the unexpected results of PALISADE-1.
>
> Upon reviewing information and data available this time, the Company believes it is not yet advisable to make a decision about resuming PALISADE-2 before discussing its broader Phase 3 development plan for PH94B with the FDA and before further assessing the potential impact of the proposed adjustments to the PALISADE-2 protocol in light of two recently completed public speaking challenge SAD studies conducted by peers, each of which did not achieve its primary efficacy endpoint.

LATHAM&WATKINS LLP

Thereafter, Vistagen once again proceeded precisely as it publicly indicated—*i.e.*, the Company engaged with the FDA in further discussions concerning its potential future Phase 3 development plan for fasedienol as a treatment for SAD, while continuing to assess the potential impact of the proposed adjustments to the PALISADE-2 study protocol and the results of the two unsuccessful Phase 2 SAD public speaking challenge studies by two peer companies.

After doing so, in the exercise of its business judgment, Vistagen determined not to resume the PALISADE-2 trial, which decision likewise was accurately and timely disclosed. Specifically, Vistagen's March 30, 2023, Press Release expressly advised investors:

> Although the results of the interim analysis of PALISADE-2 indicated that continuation of the study would not be futile, Vistagen has determined the best course of action is to close the PALISADE-2 study given the expense, time, and methodological complexities involved in resuming PALISADE-2, including consistently administering the protocol for the single-dose, clinic-based public speaking challenge study across numerous sites.

Vistagen proceeded as indicated, and on August 7, 2023, it disclosed topline results from the 141 subjects who were randomized and completed PALISADE-2 in both a press release and on Form 8-K. *See* August 7, 2023 8-K & Press Release. The market (unsurprisingly) reacted positively to this important milestone. The favorable interest in Vistagen and its development of fasedienol has only continued since then, with a leading CNS securities analyst Paul Matteis of Stiffel recently initiating coverage of Vistagen on November 13, 2023, as a "buy rating and $12 target price."

Your Letters also claim that Vistagen's decision to raise capital after its positive August 7, 2023, press release was somehow fraudulent. Not so. As is well known, clinical stage biopharmaceutical companies like Vistagen routinely raise substantial amounts of capital, including primarily through sales of their securities, to continue to fund their operations in line with their mission, including clinical trials and many other non-clinical drug development activities. To do so, in 2021, as is common practice, Vistagen entered into an industry standard agreement with Jefferies LLC ("Jefferies") relating to the potential sale, from time to time, of up to $75 million worth of shares of Vistagen's common stock in an at-the-market, or "ATM" offering. *See, e.g.,* June 23, 2022, 10-K (disclosing ATM). ATM offerings allow companies to raise capital over time by making a pre-specified amount of stock available for sale. To execute an ATM offering, Vistagen was required to certify that it was not in possession of any material, non-public information prior to selling its stock under the ATM agreement with Jefferies. In compliance with this requirement, on Monday, August 7, 2023, Vistagen publicly disclosed the material non-public information in its possession – that the topline results of PALISADE-2 were positive – and then elected to raise capital via the ATM, which it also accurately and timely disclosed. Vistagen's aggregate ATM sales of common stock during the week of August 7, 2023 represented less than 3% of its total trading volume on the Nasdaq Capital Market during that week, negating any allegation it indiscriminately "dumped" stock.

Furthermore, Vistagen accurately and timely disclosed its financial condition and risk factors to investors, and explicitly warned in its press releases that it may not be able to raise

funds to continue its clinical trials. *See, e.g.*, November 10, 2022 10-Q at n.2; *see also* August 7, 2023, Press Release (noting that there are "substantial risks and uncertainties in the process of development and commercialization," including "risks and uncertainties relating to Vistagen's ability to secure adequate financing for its operations, including financing or collaborative support for continued clinical development of fasedienol"). Likewise, Vistagen timely disclosed its balance sheet and other financial information in accordance with SEC requirements. *See, e.g.*, June 23, 2022 10-K. The notion that investors did not know Vistagen would need to continue raising capital – including to continue funding Phase 3 clinical development of fasedienol — is undermined by these plain disclosures.

**Vistagen's Historical Disclosures**. Your Letters also make a number of allegations about other public statements made since 2019. For example, your Letters incorrectly alleges that investors were told that the PALISADE trials would use the Liebowitz scale to measure the primary endpoint. In fact, the Company repeatedly and consistently stated that the development of fasedienol would be as an on-demand, as-needed treatment for SAD. *See* April 1, 2019 Press Release. The SUDS is the appropriate primary efficacy endpoint for the as-needed acute treatment of SAD, not the Liebowitz scale. Similarly, Vistagen's July 23, 2020, Press Release disclosing its alignment with the FDA regarding Phase 3 development of PH94B clearly disclosed:

> As in the successful Phase 2 study of PH94B in SAD, the study will involve a single laboratory-simulated anxiety-provoking public speaking challenge. The Subjective Units of Distress Scale (SUDS) will be used to assess the primary efficacy endpoint in the study.

Vistagen made similar disclosures regarding the acute treatment endpoint and/or use of the SUDS in its press releases dated May 26, 2021, September 13, 2021, and July 22, 2022, and other company disclosures, including its many SEC filings.

Your Letters also claims that Vistagen hid certain information regarding the earlier PH94B Phase 2 results – a claim which is belied by the plain language of the April 1, 2019 press release, which explicitly noted and linked to a peer-reviewed publication discussing the Phase 2 PH94B study results—the *American Journal of Psychiatry*—which likewise disclosed extensive detail for the Phase 2 PH94B public speaking challenge study and the study results. *See* April 1, 2019, Press Release at note 2.

**Regulation FD**. Finally, your Letters appear to allege that Mr. Singh violated Regulation FD by: (1) disclosing certain confidential information about a potential business deal involving Vistagen's AV-101 product to "investors" at a meeting in New York; and (2) misrepresenting the PALISADE-2 biostatisticians' recommendations for proceeding with that study without changes. Based on its review and counsel's investigation, the Board has concluded that both accusations are without merit, and that there is no basis to conclude that Mr. Singh violated Regulation FD. Furthermore, there is no private right of action for purported violations of Regulation FD. 17 CFR § 243.100; *see* https://www.sec.gov/news/testimony/051701wssec.htm.

* * *

For all of the reasons stated herein, the Board has accordingly determined to reject your demands. In making this decision, the Board considered multiple factors, including but not limited to the following:

1. The fact that the claims asserted in the Letters lack merit;

2. The distraction and negative impact further investigation into the claims would have on Vistagen, its officers and directors, and its employees; and

3. The substantial costs associated with conducting further investigation into and/or pursuing the claims in the Letters.

Nothing set forth in this letter shall be construed as a waiver of any of Vistagen's rights or remedies, all of which are expressly reserved.

Finally, if you are represented by counsel, please forward this letter to them and ask that they direct all future communications to my attention.

Best regards,

Colleen C. Smith
of LATHAM & WATKINS LLP

May 4, 2026

**Case # 2:26-cv-01128-RFB-MDC**

**Clerk of the Court**

United States District Court, District of Nevada

333 S. Las Vegas Blvd. Las Vegas, NV 89101

**Re: Filing of Amended Complaint**

Dear Clerk of the Court:

Enclosed for filing, please find the **Amended Complaint** in the above-referenced matter.

This amended pleading incorporates supplemental evidence, including new exhibits and recent SEC filings concerning Vistagen. For the Court's convenience, please be advised that the primary substantive additions and modifications are located within the final pages of the document.

The plaintiffs submit that this Amended Complaint is timely filed. However, should the Court determine that leave is required, we will promptly file a formal Motion for Leave to Amend.

Thank you for your time and assistance in processing this filing.

Sincerely,

David Preka and John Cesario

FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

MAY 05 2026

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

Align top of FedEx® shipping label here.

ORIGIN ID:SKKA (860) 739-2492
CESARIO, JOHN
C/O THE PARCEL CENTRE, LLC
310R FLANDERS RD

EAST LYME, CT 06333
UNITED STATES US

SHIP DATE: 04MAY26
ACTWGT: 0.50 LB
CAD: 267700735/FAPI2208
DIMS: 0x0x0 IN

BILL SENDER

TO THE COURT, CLERK OF
US DISTRICT COURT NV
333 LAS VEGAS BLVD S

LAS VEGAS NV 89101
(600) 666-6666 REF: 15542759
INV:
PO: DEPT:

FedEx Express

E

TUE - 05 MAY 10:30A
PRIORITY OVERNIGHT

TRK# 0201 8713 9059 7821

XX VGTA

89101
NV-US LAS

Part # 156297 EXP 02/27

Envelop

Recycle m

077 TUE 05/05 07:27
333 LAS VEGAS BLVD S
PRIORITY OVERNIGHT
410-3035
89101-7065-99
LAS VEGAS,NV
SP:PD.100.Y
TP: 1